UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:09CV-P36-H

KENNETH L. COURTNEY                                                            PLAINTIFF

V.

MATTHEW CHAUDOIN                                                 DEFENDANT

**MEMORANDUM OPINION**

Pro se Plaintiff, Kenneth Courtney ("Courtney"), brings this action alleging that Defendant, Matthew Chaudoin ("Chaudoin"), a Louisville Metro Police Officer, used excessive force in extracting him from a police cruiser and taking him to be booked. The matter is now before the Court on Defendant's motion for summary judgment based on qualified immunity. This case presents difficult questions because some testimony about material events is conflicting and because Courtney did not receive any serious injury. For the reasons explained below, the Court will sustain in part and deny in part Defendant's motion.

**I.**

On the evening of December 3, 2008, Chaudoin served an arrest warrant for escape on Courtney.[1] After serving the warrant, Chaudoin placed Courtney in the back of his police cruiser and took him to Metro Corrections for booking. The parties dispute what happened during the drive.[2] According to the Chaudoin, Courtney was "combative, belligerent, profane and was

---

[1] The record does not shed light on the circumstances surrounding the escape charge or the initial arrest.

[2] Because this is a summary judgment motion, the Court views the facts in the light most favorable to Plaintiff. See *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, in this section, the Court references the allegations of both Courtney and Chaudoin to establish the relevant factual disputes.

spitting through and into the shield located between the back seat of the cruiser and the front seat." (Def.'s Mem. Supp. Summ. J. 1.) Courtney denies that he was profane or spitting (Pl.'s Mem. Opp. Summ J. 1, May 3, 2010; Dkt. No. 33) and further claims that "at all times relevant to complaint, plaintiff acted in accordance to authority and showed no resistance to arresting ofc." (Pl.'s "Pretrial Discovery" Mem. 1, Nov. 25, 2009.) A video taken from inside the car during Plaintiff's transport does little to clarify what happened because the images are grainy and mostly dark and the tape does not include audio. For portions of it, Plaintiff's face is hidden. The video does show Courtney's mouth moving from time to time; it also shows him shifting in the back seat of the car. However, it is unclear from the video whether Courtney was in fact being combative or profane. There is no evidence of spitting, but because of the poor image quality and camera angle, the Court is unable to tell, definitively, whether Courtney was spitting.

Upon arrival at the sally port, Courtney's Complaint described the events as follows:

> I observed two plain cloths [sic] officers and Ofc. Matthew Chaudoin # 7616 put gloves on, at which this time one of the (unknown) plain clothes officers opened the cruiser door and pulled me out by my clothes. I managed to stand on my feet, at this time the other two officers 1) Matthew Chaudoin #7616 and 2) unknown officer, assaulted me, kicked me to the ground with force while my hands were still cuffed behind my back. (I fell to the ground ... left knee first, then to my face.)[3]

(Compl. pp. 4-5.) Courtney went on to say that the kick to the ground resulted in "swelling, severe pain, and numbness to left knee," and "constant and severe headaches which required me to receive medical attention." (*Id.*) His Complaint also alleges that the tightness of his handcuffs caused scarring to his wrist and pain in the nerves on the back of his hands. (*Id.*) In later filings, Courtney gave additional details and made more allegations. For example, in a "Memorandum"

---

[3] Courtney later moved to amend his Complaint to name an additional officer, Keith Heselschwerdt, who was apparently involved in the incident at the sally port. The Court denied Courtney's motion because his amendment was barred by the statute of limitations.

dated June 3, 2009, Plaintiff says that after he was pulled from the car:

> I struggled to maintain my balance (stumbled to my feet) showing NO RESISTANCE to authority. I was told to spread my legs. I complied with OFC Chaudoin's #7616 request. About this time OFC Chaudoin #7616 and unknown OFC. #1 and unknown OFC. #2 grabbed my arms from behind (while handcuffed), kicked my legs apart and shoved me to the concrete, landing on my left knee and left side of my face. At this time one of the officers #2 unknown put some type of knitted mask over my head, tightening around the neck area making breathing complicated. Once pulled to my feet, I was taken to a metal bench and handcuffed to it for 2.5 hours. I urinated in my pants. I remained there until I was officially booked by LMDC.[4]

(Pl.'s Mem. 1, Aug. 20, 2009.)

Chaudoin disputes Courtney's assertions that he was not profane, spitting or resisting authority (Chaudoin Aff. ¶ 3, Jan 27, 2010.), contending that he asked Courtney to get out of the car, but Courtney refused and resisted attempts Chaudoin's attempt to remove him. (*Id.* at ¶¶ 4-5.) Two other officers helped Chaudoin remove Courtney from the vehicle. (*Id.* at ¶ 6.) In his Affidavit, Chaudoin goes on to say:

> Because the Plaintiff was spitting, I decided to use a spit mask which is a cloth garment which fits on the head and covers the mouth. However, Mr. Courtney continued to be uncooperative and because he is approximately 6', I decided to "sweep" his leg to bring him to the ground in order to place the mask on his head. ... I swept his leg, he went to the ground but was supported by Officer Heselschwerdt and myself. ... Mr. Courtney never complained of a knee or face injury and we proceeded to take him into Corrections.

(*Id.* at ¶¶ 7-9.) Chaudoin does not appear to dispute that Courtney was handcuffed during the leg sweep. It is unclear whether Chaudoin admits or denies that Plaintiff was handcuffed to a bench for two and a half hours.

---

[4] Courtney has asserted throughout this case that there was a video of the incident in the sally port. Defendant contends that the only video in existence is the transport video. Counsel for Defendant has confirmed, in supplemental disclosures to the Court, that there was no video camera in the sally port on the day of Courtney's arrest. (Def.'s Supp. Discl. 1, Dkt. No. 23.)

Louisville Metro Department of Corrections jail records from the date of Chaudoin's booking do not detail any medical problems, other than an unexplained "back problem." (Jail Records; Def.'s Mot. Summ. J., Ex. 4.) Next to a question that reads "Do you have a Medical Problem such as bleeding or injuries that requires immediate medical attention?" someone typed an "N" for no. (*Id.*) However, two days later on a Correctional Medical Services Health Services Request form, Courtney complains of a "very painful knee injury due to scuffle with (Lou. Metro Police Dept.) swelling and dislocation." (*Id.*) It appears Courtney was given an ACE wrap, Tylenol and referred to a doctor. Another, later medical form, shows that Courtney was again complaining of a knee problem. (Jail Records; Def.'s Mot. Summ. J., Ex. 5.) The record indicates that there was "slight swelling to base of left knee ..." and that Courtney had previously had an Xray. None of the medical records provided by Defendant mentions a head injury. Courtney did not provide any medical records.

On January 3, 2009, Courtney filed a verified complaint, alleging excessive force. The parties attempted some discovery, though the process was hindered by Courtney's incarceration and his status as a pro se plaintiff. Now, Chaudoin has moved for summary judgment based on qualified immunity.

## II.

Summary judgment is proper "if the pleadings, the discovery and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[N]ot every issue of fact or conflicting

4

inference presents a genuine issue of material fact which requires the denial of a summary judgment motion." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). "The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). In determining whether summary judgment is appropriate, the Court must resolve all ambiguities, and draw all reasonable inferences, against the moving party. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morrison v. Bd. of Trs.*, 583 F.3d 394, 399-400 (6th Cir. 2009).

### III.

Chaudoin argues that he is entitled to summary judgment because qualified immunity serves as a bar to Courtney's excessive force claims. "Qualified immunity shields government officials performing discretionary functions from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Morrison*, 583 F.3d at 400 (quoting *Feathers v. Aey*, 319 F.3d 843, 847 (6th Cir. 2003) (citations omitted)). "Qualified immunity does not serve merely as a defense against liability to be asserted during litigation. Rather, it offers 'an entitlement not to stand trial or face the other burdens of litigation.'" *Id.* (internal citations omitted). "Qualified immunity will often operate to protect officers from the sometimes hazy border between excessive and acceptable force." *Solomon v. Auburn Hills Police Dep't.*, 389 F.3d 167, 174 (6th Cir. 2004). The Sixth Circuit engages in a two-part inquiry when evaluating qualified immunity in excessive force cases. *Solovy*, 2010 U.S. App. LEXIS 8785 at * 17 (citing *Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009)).

5

> First, the court asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the officer's conduct violated a constitutional right. Second, the court determines whether the constitutional right allegedly violated was 'clearly established.' A right is clearly established if 'any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct.'

*Id.* (citing *Bouggess v. Mattingly*, 482 F.3d 886, 894 (6th Cir. 2007) (internal citations omitted)).[5]

Thus, the Court will now consider whether the facts alleged, taken in the light most favorable to Courtney, show that Chaudoin's actions violated Courtney's constitutional rights.

A.

Section 1983 provides a federal cause of action for the deprivation of "any rights, privileges or immunities secured by the Constitution and law." 42 U.S.C. § 1983. "To state a claim under Section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Here, Plaintiff claims that the Defendant violated his constitutional rights by subjecting him to excessive force between the arrest and booking process. Though Plaintiff's Complaint characterizes this as a Fourteenth Amendment claim, the Defendant asserts, and the Court agrees, that Plaintiff's Complaint is properly analyzed as an unreasonable search or seizure claim under the Fourth Amendment.

The Fourth Amendment governs where, as here, the alleged force occurs while the

---

[5] The Supreme Court's recent opinion in *Pearson v. Callahan* established that a court may consider the prongs in whatever order is appropriate. 129 S.Ct. 808 (2009)

suspect or arrestee is still in the custody of the arresting officer. *Phelps v. Coy*, 286 F.3d 295, 300 (6th Cir. 2002).[6] Unlike excessive-force claims under the Eighth or Fourteenth Amendments – which employ tougher tests and require a Plaintiff to show more force to state a claim[7] – the Fourth Amendment merely asks whether an officer's actions were reasonable. *Graham*, 490 U.S. at 395. "The 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. To determine whether force is reasonable under the Fourth Amendment, the court must balance the "individual interest in being free from unreasonable seizures" against the "important government interest in protecting the safety of its peace officers and the public." *Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 486 (6th Cir. 2007) (citing *Graham*, 490 U.S. at 396). The court must carefully consider the facts and circumstance of each particular case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

In his Complaint, Courtney asserts – and Chaudoin does not seem to dispute – that he

---

[6] The Sixth Circuit has recently held that in this circuit: "the Fourth Amendment protects pretrial detainees arrested without a warrant through completion of their probable-cause hearing." *Aldini v. Bodine*, Nos. 09-3183/3258, 2010 U.S. App. LEXIS 13207 at *2-3 (6th Cir. June 29, 2010).

[7] For example, the Eighth Amendment asks "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Phelps v. Coy*, 286 F.3d 295, 300 (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (internal quotations omitted)). Where neither the Eighth Amendment nor the Fourth Amendment apply, "the more generally applicable due process clause of the Fourteenth Amendment still provides some protection." *Phelps*, 286 F.3d at 300. For example, the due process clause "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Id.* (quoting *Graham*, 490 U.S. at 395 n.10).

7

was handcuffed before and during his arrival at the sally port.[8] He also alleges that at all relevant times he "acted in accordance with authority." He says that he was not profane or belligerent and that he did not resist Chaudoin. He says he was not spitting. Though the video in this case did not capture the alleged force, it did capture part of Courtney's ride in the cruiser. Nothing in the video contradicts Courtney's version of the events in the cruiser. With that backdrop, Courtney asserts that at the sally port, Chaudoin "assaulted me, kicked me to the ground with force while my hands were still cuffed behind my back." He says that the kick to the ground caused him to hit his knee and face. The jail records, while not supporting any allegation of serious injury, at least show that Courtney complained of a knee injury, had some swelling, received an ace bandage and Tylenol and was taken for an X-ray. Courtney goes on to say that Chaudoin placed a knitted mask (spit shield) over his head, and tightened it around his neck, making breathing difficult. He says he was handcuffed to a metal bench for two-and-a-half hours, causing him to urinate in his pants.

The parties present different versions of events. Though Chaudoin's version may appear the more believable, Courtney's testimony, the written evidence and the videotape could lead a reasonable jury to conclude that it is not so. Therefore, the Court must determine whether Courtney's allegations of force, related (1) to the leg sweep and spit shield, (2) to the tight handcuffing or (3) to the hours handcuffed to a bench, rise to the level of constitutional violations under the Fourth Amendment.

1.

First, the Court must determine whether it is objectively reasonable to perform a leg

---

[8] Courtney also asserts that the handcuffs were too tight during the ride in the cruiser.

sweep and use a spit shield on an arrestee who is not resisting, not combative and not spitting. Though no Sixth Circuit case presents these exact facts,[9] many deal with the use of force on an arrestee who is not resisting or trying to escape. The Sixth Circuit has consistently held, in the context of a Fourth Amendment excessive-force claim, that "the use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law." *Morrison v. Bd. of Trs.*, 583 F.3d 394, 404 (6th Cir. 2009) (quoting *Baker v. City of Hamilton Ohio*, 471 F.3d 601, 609 (6th Cir. 2006). "The reason for this is that once the detainee ceases to post a threat to the safety of the officers or others, the legitimate government interest in the application of significant force dissipates." *Morrison*, 583 F.3d at 404 (citing *Phelps v. Coy*, 286 F.3d 295, 301-02 (6th Cir. 2003). This rule also applies to suspects who are handcuffed and not resisting. *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988) (blow with nightstick to handcuffed, unresisting suspect would be gratuitous and therefore unreasonable). Furthermore, "while an excessive use of force claim *may* be established through evidence of severe injury or physical contact, this Circuit has not required that this *must* be the case." *Morrison*, 583 F.3d at 407 (citing *Ingram v. City of Columbus*, 185 F.3d 579, 597 (6th Cir. 1999). Rather, a plaintiff may allege excessive force "even where the physical contact between the parties did not leave excessive marks or cause extensive physical damage." *Id.* (citing *Holmes v. City of Massillon*, 78 F.3d 1041, 1048 (6th Cir. 1996) (upholding excessive force claim where plaintiff alleged that officers used excessive force in removing her wedding ring); see also *Pigram v. Chaudoin*, 199 Fed. Appx.

---

[9] One district court case from the Northern District of Illinois addressed circumstances similar to the one in this case. The Court found that the use of a leg sweep on a handcuffed arrestee who claimed he was not resisting was excessive. *Gregory v. Oliver*, 226 F.Supp. 2d 943 (N.D. Ill. 2002). At least two factually distinguishable district court opinions in this circuit have addressed leg sweeps. See *Wallace v. City of Shelby*, 968 F.Supp. 1204 (N.D. Ohio 1997) (police officer who used leg sweep on a resisting, non-handcuffed suspect was entitled to qualified immunity); see *Hysell v. Thorp*, 2009 U.S. Dist. LEXIS 11597 at *55 (S.D. Ohio 2009) (leg sweep on suspect, who was not resisting and not handcuffed, constituted excessive force).

9

509, 513 (6th Cir. 2006) (angry and cursing arrestee had right not to be slapped gratuitously).

The force that Chaudoin applied may not appear to be excessive. After all, Courtney suffered no serious injury of any kind. However, Sixth Circuit cases referenced above caution that even force not resulting in serious injury can be unreasonable when applied to a handcuffed arrestee who is not resisting or trying to escape. Consequently, this Court concludes that Chaudoin's actions related to the leg sweep and spit shield, as described by Courtney, constitute a Fourth Amendment violation.[10]

2.

The test for claims of excessively tight handcuffing is more stringent. In *Solovy v. Morabito*, the Sixth Circuit said:

> In order for an excessive force claim based on unduly tight handcuffing to survive summary judgment, a plaintiff must offer sufficient evidence for a reasonable jury to find that "(1) he or she complained that the handcuffs were too tight; (2) the officers ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing."

No. 09-1555, 2010 U.S. App. LEXIS 8785 at *13 (6th Cir. April 27, 2010) (quoting *Morrison*, 583 F.3d at 401) (internal citations omitted). Here, Courtney's Complaint alleged tight handcuffing and asserted that it caused "scarring" and nerve pain. However, he never alleged that he told Chaudoin that the handcuffs were too tight or that Chaudoin ignored his complaints. As such, Courtney did not plead sufficient facts for his tight handcuffing claim to survive summary judgment. This portion of his claim fails.

The one remaining issue for the Court to consider is whether Courtney's allegation that

---

[10] Typically, the question of whether an officer's actions were reasonable would be an issue left to a jury. However, Sixth Circuit cases repeatedly hold that in qualified immunity cases, the Court is to determine whether there was a violation of a constitutional right. See *Solovy v. Morabito*, No. 09-1555, 2010 U.S. App. LEXIS 8785 at *13 (6th Cir. April 27, 2010); see also *Bouggess v. Mattingly*, 482 F.3d 886, 894 (6th Cir. 2007).

he was handcuffed to a bench for two-and-a-half hours before booking could, alone, be sufficient to state a claim for excessive force. Courtney does not allege any injury related to this treatment, other than urinating in his pants, nor does he describe the circumstances with any particularity. As such, it is unclear whether there was a violation of Courtney's rights, and this issue is better resolved in the Court's analysis in Section B, Part 2.

B.

Some of the actions Courtney alleges support a finding that Chaudoin used excessive force. As noted above, that finding does not end the Court's inquiry where the summary judgment motion is based on qualified immunity. The Court must next ask, for each behavior that violates Courtney's constitutional rights, whether the right was clearly established. A recent Sixth Circuit case, *Binay v. Bettendorf*, gives further explanation to when a right is clearly established. 601 F.3d 640, 651-52 (6th Cir. 2010). There, the Court said:

> For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. [A]n action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs. [I]n an obvious case, [general] standards can 'clearly establish' the answer, even without a body of relevant case law. [T]here need not be a case with the exact same fact pattern or even 'fundamentally similar' or 'materially similar' facts; rather, the question is whether the defendants had 'fair warning' that their actions were unconstitutional.

*Id.* (internal citations and quotations omitted).

1.

First, the Court must determine whether Courtney's right to be free from the force of a leg sweep and spit shield when he was neither resisting nor spitting was a "clearly established" right. As noted above, no cases in this circuit present the exact facts of the present case.

11

However, Sixth Circuit case law "clearly establish[es] the right of people who pose no safety risk to the police to be free from gratuitous violence during arrest." *Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681, 687-88 (6th Cir. 2006). "This circuit's case law had recognized the unconstitutionality of using gratuitous force against an incapacitated suspect since 1991." *Solovy*, 2010 U.S. App. LEXIS 8785 at * 19 (citing *Phelps* v. Coy, 286 F.3d 295, 302 (6th Cir. 2002). Subsequent cases reinforce those findings and establish that where an arrestee is neither resisting nor attempting to escape the use of any force may be unreasonable. *See, e.g., Miller v. Sanilac County*, No. 09-1340, 2010 U.S. App. LEXIS 11469 (6th Cir. June 4, 2010) (denying qualified immunity to officer where plaintiff alleged that he was not resisting arrest when officer slammed him into car); *Morrison,* 583 F.3d 394 (denying qualified immunity because under the plaintiff's version of events a reasonable juror could conclude that the officer pushed the plaintiff's face into the ground in absence of a real concern for his safety); *Pigram v. Chaudoin*, 199 Fed. Appx. 509, 513 (6th Cir. 2006) (denying qualified immunity to an officer who slapped a suspect in the face because he was being unruly); *Baker v. City of Hamilton*, 471 F.3d 601, 607 (6th Cir. 2006) (denying qualified immunity because even though plaintiff had attempted to flee and was not restrained, he was attempting to surrender when he was struck on the head).

Such cases gave Chaudoin "fair warning" that, in this circuit, almost any force against a non-resisting, handcuffed arrestee is unreasonable, including knocking him to the ground to put a spit shield over his head when he is not spitting. Because of the law in this circuit and the facts of this case, the Court concludes that Chaudoin is not entitled to qualified immunity based on his use of the leg sweep and spit shield.

12

2.

The state of the law requires a different result as to Courtney's claim that he was handcuffed to a bench for two-and-a-half-hours before being booked. The Sixth Circuit cases addressing the length of time a suspect or arrestee was handcuffed typically arise in the context of a search or in cases involving handcuffs that are painfully tight. *See e.g. Morrison*, 583 F.3d at 401 (handcuffs too tight); *Solovy*, 2010 U.S. App. LEXIS 8785 at *13 (same); *Duncan v. Jackson*, 243 Fed. Appx. 890, 896 (6th Cir. 2007) (plaintiffs handcuffed for two to three hours during a search); *Burchett v. Kiefer*, 310 F.3d 937 (6th Cir. 2002) (unreasonable to handcuff plaintiff in a police car for three hours in 90-degree heat with no ventilation). Because it is not inherently obvious that handcuffing an arrestee to a bench for two-and-a-half-hours is unreasonable, and because the cases in this circuit have not previously addressed such a claim, the Court finds that such a right was not "clearly established." Thus, qualified immunity shields Chaudoin from suit in this particular claim.

The Court will enter an Order consistent with this Memorandum Opinion.

cc: Counsel of Record